# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANTHONY MINNIS

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE, JOSEPH
ALLEVA, Individually and in his Official
Capacity as Athletic Director, MIRIAM
SEGAR, Individually and in her Official
Capacity as Senior Women's
Administrator, and EDDIE NUNEZ,
Individually and in his Official Capacity
as Associate Athletic Director

CIVIL ACTION

NO. 13-5-BAJ-RLB

## RULING AND ORDER

Before the Court is Defendants' **Motion to Dismiss Complaint Pursuant
to Rule 12(b)(6) (Doc. 8)**. Also before the Court is Defendants' **Supplemental
Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Doc. 21)**. Plaintiff,
Anthony Minnis ("Plaintiff," or "Minnis"), filed this lawsuit against the Board of
Supervisors of Louisiana State University ("LSU"), as well as Miriam Segar, in her
individual and official capacity as Senior Women's Administrator of the Louisiana
State University Athletic Department ("Segar"), Joseph Alleva, in his individual
and official capacity as Athletic Director ("Alleva"), and Eddie Nunez, in his
individual and official capacity as Associate Athletic Director ("Nunez") (collectively,
"Administrator Defendants"), after he was terminated from his position as Women's

Tennis Coach at LSU (Doc. 1). Minnis alleges various claims: impairment of contract on the basis of race in violation of 42 U.S.C. § 1981; various claims under 42 U.S.C. § 1983, including violations of Minnis's rights under the First and Fourteenth Amendments.

## BACKGROUND

LSU hired Minnis, a black male, as Head Coach of the Women's Tennis Team in August 1991 (Doc. 1-2, at 1). In his 21 years a Head Coach, Minnis's teams qualified for the NCAA Tournament 15 times (Doc. 1-2, at 2). He was chosen as Southwest Regional Women's Tennis Coach of the Year five times, and SEC Coach of the Year once (Doc. 1-2, at 2). Minnis coached ten All-American[1] tennis players during his time at LSU, including the SEC Player of the Year in 2001 and 2007 (Doc. 1-2, at 2). Throughout his tenure, Minnis's student-athletes averaged over a 3.0 GPA and each athlete who remained in the program for four years graduated (Doc. 1-2, at 2).

Minnis alleges he was subject to "unwelcome race-based harassment and discrimination," including: 1) receiving an annual salary of up to $30,000 less than white coaches; 2) being "subjected to unjust evaluations and false letters of reprimand based on non-existent policies"; 3) false accusations against Minnis and "unfound[ed] write-ups (sic)"; and 4) treating similarly situated white persons more

---

[1] An All-American team is an honorary team from any American college sport composed of outstanding amateur players. These players are considered the best players of a specific season for each team position. These players are in turn given the honorific "All-American" and are typically referred to as, "All-American athletes," or simply, "All-Americans."

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 2 of 22

favorably than Minnis because of his race (Doc. 1-2, at 2). Minnis claims he reported, protested, and complained about this discrimination and harassment both verbally and in writing (Doc. 1-2, at 3). As an example of such discrimination, Minnis claims that, in February 2012, he requested from Segar the salaries of all head coaches and assistant coaches in the Southeastern Conference ("SEC").[2] Minnis alleges that the Administrator Defendants told him in response that he was "paid in proportion to all SEC Head Women's Tennis coaches," only to discover later on his own that he was the lowest paid Head Coach at LSU and at or near the bottom when compared to other SEC Head Women's Tennis coaches (Doc. 1-2, at 3). When Minnis complained about this pay disparity, he claims the Administrator Defendants responded by giving him two ratings of "needs improvement," and made threats to his continued employment (Doc. 1-2, at 3).

Minnis further alleges that, in addition to opposing discrimination based on race and harassment, he also "opposed inequitable treatment of Women's Athletics at LSU and violations of Title IX" (Doc. 1-2, at 3). As a result of his protestations, Minnis claims he was "chastised" and "belittled" by Administrator Defendants, and threatened by Alleva that he would be terminated (Doc. 1-2, at 3).

Minnis was terminated from his position on June 30, 2012 (Doc. 1-2, at 3). Defendants Alleva, Segar, and Nunez were Minnis's supervisors at the end of his tenure at LSU (Doc. 1-2, at 2). Minnis claims that, despite his requests, Administrator Defendants refused to provide a reason for his termination, which

---

[2] It is unclear, from the face of the complaint, whether Minnis requested the salaries of the women's tennis coaches in the SEC, or coaches in all sports in the conference.

3

created a "cloud of suspicion" surrounding his termination (Doc. 1-2, at 3–4). In addition, Minnis claims that Administrator Defendants responded to reference inquiries about him by saying "he had issues," which he claims was false and painted him in a false light, and caused him to be unable to secure new employment (Doc. 1-2, at 4). Finally, Minnis claims that he received no evaluation for the 2010–11 season prior to his discharge, in violation of LSU's own policy, and that his replacement, a white female with "far less experience" is being paid substantially more than he was paid (Doc. 1-2, at 4).

Minnis filed suit against Defendants in state court on November 20, 2012, which Defendants removed to this Court on January 3, 2013 (Doc. 1). Minnis alleges the following causes of action: 1) impairment of his right to contract under 42 U.S.C. § 1981; 2) several claims under 42 U.S.C. § 1983, including violation of his right to "protest and oppose unlawful race-based and gender-based discrimination" guaranteed by the First Amendment, violation of his right to equal protection and liberty as provided by the Fourteenth Amendment; 3) claims for discrimination and retaliation based on race in violation of Title VII, 42 U.S.C. § 2000e; and 4) a claim for gender-based discrimination in violation of Title IX, 20 U.S.C. § 1681 (doc. 1-2, at 1–6). Minnis also alleges various claims under state law.

Defendants now move to dismiss a variety of Minnis's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 8). Specifically, Defendants seek dismissal of the following claims: 1) all claims under § 1983 against LSU and against the Administrator Defendants in their official capacities;

2) all § 1981 claims as to all Defendants; 3) all claims under § 1983 against the Administrator Defendants in their individual capacities on the basis of qualified immunity; 4) all Title VII claims against the Administrator Defendants in their official and individual capacities; 5) all Title IX claims against Administrator Defendants in their official and individual capacities; and 6) all Title IX claims against all defendants for punitive damages (Doc. 8-1, at 14).

## STANDARD OF REVIEW

In considering a Motion to Dismiss pursuant to Rule 12(b)(6), a court accepts as true all well-pleaded facts and views them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### A. Claims under § 1983 and § 1981

Defendants move to dismiss Minnis's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 against the Administrator Defendants in their official and personal capacities. Section 1983 imposes liability upon any person who, acting under color of

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 5 of 22

state law, deprives another of federally protected rights. Alone, § 1983 does not create any federally protected right, but it provides a cause of action for individuals to enforce federal rights created elsewhere, such as other federal statutes or the Constitution. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979) (Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."). Minnis claims Administrator Defendants deprived him of his rights to equal protection and liberty as provided in the 14th Amendment, and his right to free speech as provided in the 1st Amendment (Doc. 1-2, at 4).

### i. Section 1981 Claims against LSU and Administrator Defendants in their Official Capacities

Section 1981 provides that all persons "have the same right to make and enforce contracts . . . as enjoyed by white citizens." 42 U.S.C. § 1981. The statute "is designed to include a federal remedy against discrimination in employment on the basis of race." *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459–60 (1975)). Minnis's claims under § 1981 are against all Defendants, including the Administrator Defendants in their official and individual capacities.

Under controlling Fifth Circuit law, claims under § 1981 may not proceed independently against a government actor in his official capacity. *Oden v. Oktibbeha County, Miss.* 246 F.3d 458, 463 (5th Cir. 2001) (relying on *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)). In such a situation, § 1981 claims must be brought through § 1983. *Id.* *Oden* found that the plaintiff could not maintain an

6

independent cause of action under § 1981 against the defendant county sheriff in his official capacity. *Id.* at 464. The Fifth Circuit, following the decision in *Jett*, reasoned that "Congress intended § 1983 to be the sole remedy for discrimination by persons acting under color of state law," and as such "the Court decline[s] to imply a cause of action under § 1981 independent of § 1983." *Id.* at 463. "§ 1981 implicitly create[s] an independent cause of action against private actors because no other statute created such a remedy. ... [However,] Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law." *Id.* Thus, any claims brought by a plaintiff solely under § 1981 cannot seek relief against a defendant in his official capacity. Minnis's § 1981 claims are brought independently from his claims under § 1983 against Defendants' in their official capacities. Therefore, the Court finds he has failed to sufficiently allege his § 1981 claims against the Administrator Defendants in their official capacities and LSU. Defendants' motion to dismiss these claims is hereby GRANTED.

### ii. Claims Against Administrator Defendants in their Individual Capacities Under § 1981 and § 1983

Minnis also seeks to hold the Administrator Defendants liable in their individual capacities under § 1981 and § 1983. Defendants respond that they are entitled to qualified immunity, and any claims against the Administrator Defendants in their individual capacities should therefore be dismissed (Doc. 8-1, at 6). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To achieve this balance, qualified immunity shields government officials from liability when they perform discretionary functions provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity. *Nerren v. Livingston Police Dep't*, 85 F.3d 469, 473 (5th Cir. 1996).

Courts employ a two-step analysis in order to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the court considers whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional right. *Id.* Second, the court considers whether that right was clearly established at the time of the alleged misconduct. *Id.*

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Furthermore, each defendant's actions must be evaluated individually. *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007) (noting that the Fifth Circuit has "consistently examined the actions of defendants individually in the qualified immunity context"); *see also Hernandez v. Tex Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883–84 (5th Cir. 2004); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005); *Tarver v. City of*

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 8 of 22

*Edna*, 410 F.3d 745, 752–54 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Thus, in order to defeat the Administrator Defendants' qualified immunity defense, Minnis's complaint must allege facts that, if true, show that each defendant violated his rights by acting in a way that he or she should have known was unlawful. "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (citing *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).

Viewing the complaint in consideration of the foregoing standard, the Court will analyze Minnis's allegations against each Administrator Defendant individually.

## Senior Women's Administrator Miriam Segar

Minnis alleged few specific allegations against Segar. He claims that he requested from Segar "the salaries of all Head and Assistant Coaches in the SEC because [he] told Defendants he was being paid in a racially discriminatory manner" (Doc. 1-2, ¶ 7). Minnis then alleges that Defendants Alleva and Nunez, not Segar, "repeatedly and falsely told [him] he was paid in proportion to all SEC Head Women's Tennis coaches," only to later discover for himself that "in comparison to

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 9 of 22

all other SEC Head Women's Tennis coaches, [he] was at or near last [in pay]" (Doc. 1-2, ¶ 10). When Minnis complained about the disparity in pay, he alleges that "Defendants" responded with two ratings of "needs improvement" and threats to his employment, even though Minnis had just coached his team into the NCAA Tournament that year (Doc. 1-2, ¶ 10). Minnis does not specify which Defendant threatened his employment, or issued him the poor rating described above. In addition, Minnis alleges that, when he opposed "unlawful discrimination/harassment and retaliation as well as Title IX gender inequities, he was chastised by Defendants, belittle by Defendants, and threatened by Defendant Alleva that he would be terminated" (Doc. 1-2, ¶ 9). Minnis next alleges that each of the Administrator Defendants, including Segar, "responded to reference inquiries for [him] as 'he had issues,'" which Minnis claims was false and painted him in a "false public light" (Doc. 1-2, ¶ 11). Minnis then alleges that each of the Administrator Defendants, including Segar: "violated [his] clearly established rights by harassing him, threatening him, and terminating his employment . . . ." (Doc. 1-2, ¶ 17), "fired him on account of his race, paying racially disparate pay, and terminating his employment . . ." (Doc. 1-2, ¶ 18), denied him a name-clearing hearing in violation of his right to liberty under the 14th Amendment (Doc. 1-2, ¶ 19), and acted in "wanton and reckless disregard for Petitioner's rights" making them liable for punitive damages under § 1983 (Doc. 1-2, ¶ 22).

The Court finds that Minnis's allegations against Segar are not sufficient to overcome qualified immunity. Minnis has alleged that as a result of Segar's and the

other Administrator Defendants' actions, he was deprived of his right to free speech under the First Amendment, and right to liberty and equal protection under the Fourteenth Amendment. But he alleges no specific conduct on the part of Segar that would demonstrate she acted in a way that she knew was unlawful. Other than his allegations, which are vague, such as "harassment," "belittl[ing]," "chastis[ing]," and "discrimination"; and conclusory, such as "fired on account of race" and "acted in wanton and reckless disregard," Minnis's specific factual assertions do not demonstrate that Segar reasonably should have known she was violating his constitutional rights. *See Swanson,* 659 F.3d at 371. In other words, failing to provide salary information of other SEC coaches (Doc. 1-2, ¶ 7), and issuing a poor reference (Doc. 1-2, ¶ 7) are not the type of conduct sufficient to deprive Segar of the protection of qualified immunity because they do not clearly violate any of Minnis's constitutional rights. Likewise, although Minnis alleges his pay was disparately low because of his race, he fails to provide sufficient information as to how much he was paid in comparison to other coaches, both at LSU and throughout the SEC. Without this sort of specific information, the allegations are unacceptably vague and are not sufficient to overcome qualified immunity as against Segar. Accordingly, Defendants' motion to dismiss Minnis's claims against Segar in her individual capacity is GRANTED.

**Associate Athletic Director Eddie Nunez**

Minnis alleges that Nunez, along with Alleva, "repeatedly and falsely told [him] he was paid in proportion to all SEC Head Women's Tennis coaches" only to

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 11 of 22

later discover that he was not only the lowest paid Head coach at LSU, but that he was "at or near last" among SEC Head Women's Tennis coaches (Doc. 1-2, ¶ 10). In addition, Minnis makes the identical allegations against Nunez as he did against both Segar and Alleva in his complaint as part of claims against all Administrator Defendants, as discussed above (Doc. 1-2, ¶¶ 17–22). Thus, the only claim separating Nunez from Segar is Minnis's allegation that Nunez told him he was paid in proportion to all SEC Head Women's Tennis coaches, when Minnis alleges that he was actually "at or near last" in pay among that group (Doc. 1-2, ¶ 10). This allegation is simply not enough to overcome the defense of qualified immunity. It is unclear to the Court what right, if any, under the Constitution was violated by Nunez's alleged conduct. Certainly Minnis does not assert that Nunez was aware he was violating any right when he acted as Minnis alleges. Therefore, like his claims against Segar, Minnis's claims against Nunez in his individual capacity fail to overcome Nunez's defense of qualified immunity, and Defendants' motion to dismiss these claims is GRANTED.

**Athletic Director Joseph Alleva**

Apart from the allegations against the group of Administrator Defendants, Minnis makes several allegations against Alleva individually. Minnis claims that, each time he "opposed unlawful discrimination/harassment and retaliation as well as Title IX gender inequities, he was . . . threatened by Defendant Alleva that he would be terminated" (Doc. 1-2, ¶ 9). "In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must

12

demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). ). Minnis's allegations against Alleva, taken as a whole, are mere legal conclusions couched as factual allegations that the Court is not required to accept as true. *See Allain*, 478 U.S. at 286. Minnis alleges that he was fired "on account of his race," but does not provide any specific facts which would enable the Court to infer a discriminatory intent that triggered his termination. As established in *Ashcroft*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Ashcroft*, 556 U.S. at 678. Moreover, Minnis claims he "opposed unlawful discrimination/harassment and retaliation as well as Title IX gender inequities," but does not provide details on how he did so, nor does he provide specific factual claims to support his allegation that Alleva threatened termination as a result of his opposition. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* In sum, the allegations in Minnis's complaint are far too vague and conclusory to overcome Alleva's defense of qualified immunity. Therefore, Defendants' motion to dismiss Minnis's claims against Alleva in his individual capacity is GRANTED.

13

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 13 of 22

### iii. Section 1983 Claims against LSU and Administrator Defendants in their official capacities

Defendants next argue that Minnis's claims against LSU and the Administrator Defendants in their official capacities under § 1983 should be dismissed because they do not qualify as "persons" under the statute.

The United States Supreme Court establishes that neither a State nor its officials acting in their official capacities are persons under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Id.* at 66, (citing *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 472-473 (1987)). Government officials acting in their official capacities are included under the protection. Although state officials "literally are persons, . . . a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office." *Id.* at 71, (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such it is no different from a suit against the state itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Granted, this does not mean that the State or its officials cannot be sued under Section 1983 in some circumstances. In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity. The Court held that enforcement of an unconstitutional law is not an official act

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 14 of 22

because a state cannot confer authority on its officers to violate the Constitution or federal law. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993)). The *Ex Parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105. Under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985)). However, as previously noted, no such violations of rights, as it relates to the facts of this particular claim, occurred in these circumstances.

Accordingly, Minnis's claims under § 1983 against LSU and the Administrator Defendants in their official capacities cannot survive, and Defendant's motion to dismiss these claims is GRANTED.

## B. Title VII Claims

Defendants move to dismiss Minnis's claims for discrimination and retaliation under Title VII against the Administrator Defendants, who argue that employees cannot be sued in their individual capacities under Title VII, and that the individual defendants cannot be held liable as agents of Defendant LSU.

Under Title VII, it is illegal "for an employer to .... discharge any individual, or otherwise to discriminate against any individual with respect to his

15

compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). In order for an individual to be liable under Title VII, he or she must meet Title VII's definition of "employer." *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir. 1994). Title VII defines "employer" as: "a person engaged in an industry affecting commerce who has fifteen or more employees .... and any agent of such a person[.]" 42 U.S.C. § 2000e(b). "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions...." 42 U.S.C. § 2000e(a).

Although Title VII defines "employer" to include any agent of the employer, the Fifth Circuit does not interpret the statute to impose individual liability on the agent. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (affirming Rule 12(b)(6) dismissal where trial court held that employees may not be sued for damages in their individual capacities)). The Fifth Circuit has held that "relief under Title VII is available only against an employer, not an individual supervisor or fellow employee." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) (citing *Grant*, 21 F.3d at 651–53); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities").

Here, the Administrator Defendants do not meet the definition of "employer" under Title VII. Minnis may proceed with his Title VII claims against LSU, but the individual defendants are not liable under Title VII. Accordingly, Defendants'

16

motion to dismiss Minnis's Title VII claims against the individual defendants is GRANTED.

## C. Title IX Claims

Defendants next seek dismissal of Minnis's claims under Title IX, 20 U.S.C. § 1681, against the Administrator Defendants in their official and individual capacities. In addition, Defendants seek dismissal of Minnis's claim for punitive damages under Title IX. Section 901(a) of Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). Along with an express administrative enforcement remedy, the Supreme Court has recognized an implied private right of action to enforce Title IX. *Cannon v. University of Chicago*, 441 U.S. 677 (1979). "In such a suit, both injunctive relief and damages are available." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 255 (2009) (citing *Franklin v. Gwinnett County public Schools*, 503 U.S. 60, 76 (1992)).

Title IX applies to "institutions and programs that receive federal funds . . . but has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald*, 555 U.S. at 257 (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)); *see also Alegria v. Williams*, 314 F. App'x 687, 690 (acknowledging the rule as discussed in *Fitzgerald*). Therefore, Defendants' motion to dismiss Minnis's Title IX claims against the Administrator

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 17 of 22

Defendants is GRANTED. However, Minnis's Title IX claims against LSU remain pending before the Court.

Minnis's claim for punitive damages, is a general claim for such damages "as allowed by law, pursuant to 42 U.S.C. § 1983" (Doc. 1-2, ¶ 22). It is unclear from this statement whether Minnis seeks punitive damages under Title IX, but insofar as he does, such damages are not allowed. Title IX is modeled after Title VI of the Civil Rights Act of 1964, and interpreted and applied in the same manner. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). Recipients of federal funding under Title VI "have not, merely by accepting funds, implicitly consented to liability for punitive damages." *Id.* at 188. Therefore, punitive damages are also not available in private action brought to enforce Title IX. *Mercer v. Duke University*, 50 F. App'x 643, 644 (4th Cir. 2002). Accordingly, insofar as Minnis's complaint can be read to seek punitive damages under Title IX, Defendants' motion to dismiss this part of Minnis's complaint is GRANTED.

## D. Claims Under Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*

Finally, in Defendants' Supplemental Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Doc. 21), Defendants' seek dismissal of Minnis's claim under the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*, against the Administrator Defendants in their official and individual capacities. First, the Court notes that Plaintiff concedes a claim under La. R.S. 23:301 *et seq.* was never brought against the Administrator Defendants in any capacity (Doc. 24 at 1,

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 18 of 22

footnote 1.). However, to the extent that it is necessary, the Court will analyze the claim as it pertains to all Defendants.

It is well established that "[L]ouisiana's antidiscrimination law provides no cause of action against individual employees, only against employers." *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. Apr. 16, 2003); *Johnson v. Acosta*, 10-1756, 2010 WL 4025883, at *6 (E.D. La. Oct. 12, 2010) ("It is equally well established that 'Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.") *Aronzon v. Sw. Airlines*, No. 03–394, 2004 WL 57079, at *5 (E.D. La. Jan. 9, 2004) ("LEDA's provisions apply only to 'employers' as defined in Chapter 23. … Based on the clear language of the statute and both federal and state case law, the Louisiana employment discrimination laws do not expose co-employees or supervisors to liability.").

Such assertions by the courts are consistent with the statutory law of the State. La. R.S. 23:303 states "A plaintiff who has a cause of action against an employer, employment agency, or labor organization for a violation of this Chapter may file a civil suit in a district court seeking compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney fees, and court costs." La. R.S. 23:303. "Employer" under the applicable Louisiana statute is defined as:

> "**Employer**" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state *receiving services from an employee and, in return, giving compensation of any kind to an employee.* The provisions

19

of this Chapter shall apply only to an **employer** who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

La. R.S. 23:302(2). "Louisiana's definition of employer focuses on the issue of which entity pays the employee[.]" *Johnson v. Hospital Corp. of America*, 767 F. Supp.2d 678, 693 (W.D. La. Feb. 11, 2011). Federal courts sitting in diversity jurisdiction, along with Louisiana state courts, have determined an employer to be one who must "(1) receive services from an employee and [in] return give compensation to that employee; and (2) meet the requisite number of employees prescribed by the statute." *Id.*

Thus it is clear that Defendants Alleva, Segar, and Nunez do not meet the definition of employer under Louisiana law. To the extent that it is argued that the Administrator Defendants are agents of the Defendant LSU, such positions nonetheless render them employees of LSU, and thus not subject to suit under under Louisiana's Employment Discrimination laws. Plaintiff may proceed with his claim against Defendant LSU, but not against the individual Defendants. The Motion to Dismiss the Louisiana Employment Discrimination claim, as it relates to Administrator Defendants Alleva, Segar, and Nunez in their individual capacities, is GRANTED.[3]

---

[3] The Court notes its confusion with Defendants' prayer included in the Supplemental Motion to Dismiss (Doc. 21). Defendants' prayer for relief purportedly pertains to all Defendants; however, the supporting analysis pertains solely to the prayer to dismiss the Louisiana employment discrimination claims against Defendants Alleva, Segar, and Nunez, and not Defendant LSU (Doc. 8-1 at 10-11, Doc. 21-1 at 3-4).

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 20 of 22

## CONCLUSION

**IT IS ORDERED** that Defendants' **Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Doc. 8)** is **GRANTED IN PART** and **DENIED IN PART.**

1. Defendants' request that Plaintiff's § 1981 claims against Defendant Board of Supervisors of Louisiana State University and Defendants Segar, Nunez, and Alleva in their official capacities be dismissed is **GRANTED.**

2. Defendants' request that Plaintiff's § 1981 and § 1983 claims against Defendant Segar in her individual capacity be dismissed is **GRANTED.**

3. Defendants' request that Plaintiff's § 1981 and § 1983 claims against Defendant Nunez in his individual capacity be dismissed is **GRANTED.**

4. Defendants' request that Plaintiff's § 1981 and § 1983 claims against Defendant Alleva in his individual capacity be dismissed is **GRANTED.**

5. Defendants' request that Plaintiff's § 1983 claims against Defendants' Board of Supervisors of Louisiana State University and Defendants Segar, Nunez, and Alleva in their official capacities be dismissed is **GRANTED.**

6. Defendants' request that Plaintiff's Title VII claims against individual Administrator Defendants Alleva, Nunez, and Segar be dismissed is **GRANTED.**

7. To the extent that Defendants' seek to dismiss Plaintiff's Title VII claims against Defendant Board of Supervisors of Louisiana State University, Defendants' request is **DENIED.**

8. Defendants' request that Plaintiff's Title IX claims against individual Defendants Segar, Nunez, and Alleva, be dismissed is **GRANTED**.

9. To the extent that Defendants' seek to dismiss Plaintiff's Title IX claims against Defendant Board of Supervisors of Louisiana State University, Defendants' request is **DENIED.**

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 21 of 22

**10.** Defendants' request that Plaintiff's claims for punitive damages under Title IX against Defendant Board of Supervisors of Louisiana State University and Defendants Segar, Nunez, and Alleva be dismissed is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' **Supplemental Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Doc. 21)** is **GRANTED IN PART** and **DENIED IN PART.**

**1.** Defendants' request that Plaintiff's claims under the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.* against Defendants Segar, Nunez, and Alleva be dismissed is **GRANTED**.

**2.** To the extent that Defendants' seek to dismiss Plaintiff's claims under the Louisiana Employment Discrimination Law, La. R.S. 23:301 et seq. against Defendant Board of Supervisors of LSU, Defendants' request is **DENIED.**

Baton Rouge, Louisiana, this 17th day of September, 2013.

_____
**CHIEF JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Case 3:13-cv-00005-BAJ-RLB   Document 25   09/18/13   Page 22 of 22