UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTHONY MINNIS                                              CIVIL ACTION

VERSUS                                                      NO. 13-5-BAJ-RLB

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND
MECHANICAL COLLEGE, et al

RULING ON PLAINTIFF'S MOTION TO COMPEL

Before the Court is Plaintiff's Motion to Compel ("Motion") responses to Interrogatories and Requests for Production of Documents, filed on September 25, 2013. (R. Doc. 26). On October 23, 2013, Defendant filed an Opposition (R. Doc. 27), to which Plaintiff replied. (R. Doc. 38). Defendant then filed a Sur-Reply Memorandum (R. Doc. 39) in response to Plaintiff's Reply (R. Doc. 38). For the reasons given below, Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

I.  BACKGROUND

In this action, Plaintiff alleges he was terminated by Louisiana State University after 21 years of employment as the head coach of the women's tennis team. (R. Doc. 1-2). Plaintiff alleges he was harassed and eventually terminated because of his race (African American) and in retaliation for opposing racial discrimination. Plaintiff also alleges he received less pay than Caucasian head coaches of comparable LSU sports and that his pay was disproportionate to other tennis coaches in the Southeastern Conference ("SEC"). According to Plaintiff, Defendant's

conduct violated several of his constitutional rights, in addition to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

On July 8, 2013, Plaintiff served Interrogatories and Requests for Production of Documents on Defendant. (R. Doc. 26-1 at 8). According to the Federal Rules of Civil Procedure, Defendant's responses were due within 30 days of service. Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories."); Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served."). Therefore, Defendant's responses were due by August 7, 2013.

Counsel for Plaintiff wrote to Defendant on August 16, 2013 regarding the outstanding discovery requests and asking that Defendant respond by August 21, 2013. (R. Doc. 26-1 at 9). Plaintiff's counsel wrote to Defendant again on August 28, 2013, after Defendant continuously failed to produce the outstanding responses. (R. Doc. 26-1 at 10). Plaintiff attached a copy of his proposed Motion to Compel to the August 28, 2013 letter and advised Defendant that he intended to file it if responses were not produced. (R. Doc. 26-1 at 10).

On August 30, 2013, Defendant's counsel responded by e-mail to Plaintiff's letters to request a 3 week extension. (R. Doc. 26-1 at 11). The e-mail also indicates that Defendant failed to respond to Plaintiff's first letter, sent August 16, 2013. (R. Doc. 26-1 at 11). On September 3, Plaintiff's counsel responded by advising Defendant "to please forward the responses as soon as possible." (R. Doc. 26-1 at 10).

Having not received any discovery responses within the requested 3 week extension, Plaintiff filed the instant Motion on September 25, 2013. (R. Doc. 26). Plaintiff's Motion requests that the Court compel Defendant to respond to his Interrogatories and Requests for

Production and sanction Defendant for its failure to respond discovery. (R. Doc. 26-2 at 2).

Defendant filed an Opposition (R. Doc. 27) advising the Court that it provided the Plaintiff "a full and complete response" to its discovery requests. (R. Doc. 27 at 2). These responses were provided on October 21, 2013, almost a month after the filing of the Motion to Compel. Based on its discovery responses, Defendant suggests that "Plaintiff's Motion to Compel is moot" and "Plaintiff should be ordered to pay defendant's reasonable expenses incurred in opposing the motion to compel." (R. Doc. 27 at 2, 6). Defendant also accuses Plaintiff of failing to confer in good faith before filing its Motion to Compel.

After receiving Defendant's answers to discovery, Plaintiff was granted leave to file a Reply Memorandum. In his Reply, Plaintiff claims that Defendant's responses are all either incomplete or deficient. (R. Doc. 38).

Defendant was provided time to submit a Sur-Reply to address the deficiencies raised by Plaintiff's Reply. In addition to its objections to Plaintiff's discovery requests, Defendant asks the Court to not consider Plaintiff's Reply because it vastly exceeds the scope of its Motion to Compel. (R. Doc. 39).

## II. LAW AND ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)) (alterations in original). Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in the possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b).

Unless stipulated to by the parties pursuant to Rule 29 or otherwise ordered by the Court, the responding party must respond within 30 days after being served with the interrogatories or requests for production of documents. Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). The parties may not agree, however, to any extension of time that would otherwise "interfere with the time set for completing discovery." Fed. R. Civ. P. 29(b).

If a party fails to answer interrogatories or permit inspection as required under Rules 33 and 34, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**A.      Scope of the Motion to Compel**

In order for the Court to fashion the appropriate relief, it must first determine whether the relief requested by Plaintiff is appropriate and also properly before the Court.

Plaintiff's Motion to Compel seeks an order compelling Defendants, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Miriam Segar, Joseph Alleva and Eddie Nunez, to respond to Plaintiff's outstanding discovery requests.

(R. Doc. 26 at 1). As raised in the Opposition (R. Doc. 27 at 1 n.1) and acknowledged in Plaintiff's Reply (R. Doc. 38 at 1 n.1), all claims against the individual Defendants, Miriam Segar, Joseph Alleva and Eddie Nunez, were dismissed on September 18, 2013 (R. Doc. 25). Plaintiff's Motion to Compel is therefore **DENIED** as it relates to any individuals or entities that are no longer parties in this matter.

In addition, although the relief sought concerns the lack of responses to Plaintiff's Interrogatories and Request for Production of Documents (R. Doc. 26-1), in the Memorandum in Support of Motion to Compel he concludes with an allegation that "[c]ompounding the issue is the fact Defendant has still not submitted Initial Disclosures." (R. Doc. 26-2). Despite this unequivocal representation, Plaintiff provides no background or correspondence regarding this alleged failure to provide these required disclosures. Likewise, Plaintiff fails to certify that it has "in good faith conferred or attempted to confer . . . in an effort to obtain" these initial disclosures without court action. *See* Fed. R. Civ. P. 37(a)(1).

Contrary to Plaintiff's claim, Defendant has timely provided its initial disclosures. (R. Doc. 27-2 at 5-7). Plaintiff later acknowledges that he received those disclosures and used them to propound his discovery (R. Doc. 38 at 2). For the first time in his Reply, however, Plaintiff challenges the sufficiency of those disclosures, noting that it has not yet received copies of documents that were described in those disclosures as promised. (R. Doc. 38 at 9-10).

The sufficiency of the initial disclosures is not properly before the Court. The Motion to Compel did not raise this issue and the only mention regarding the initial disclosures – a single sentence in the Memorandum in Support – was inaccurate. Plaintiff's Motion to Compel is therefore **DENIED** as it relates to the initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

The remainder of the briefing relates to the sufficiency of Defendant's responses to Plaintiff's Interrogatories and Requests for Production of Documents. Defendant argues that since the filing of the Motion to Compel it has provided the outstanding responses and therefore the Motion is moot.

Defendant's responses to Plaintiff's discovery, dated October 21, 2013, were provided 105 days following the date they were propounded.[1] The responses include a set of generalized objections to all of the Requests for Production of Documents. Specific objections are raised to Interrogatory Nos. 4 and 5.[2] Specific objections are also raised to Request for Production Nos. 1, 2, 4, 6, and 7. Plaintiff challenges the sufficiency of all of these responses.

The parties have been given sufficient opportunity to address the discovery responses at issue as they relate to the Motion to Compel. To do as Defendant suggests – consider the Motion to Compel moot because partial responses with objections have now been provided, and presumably require Plaintiff to file a new Motion to Compel regarding those responses to get relief from the Court – would needlessly delay resolution of the issues in dispute.[3] Considering the specific facts of this case, the time remaining for discovery under the Court's Scheduling Order, and the sufficient briefing regarding the issues, the Court will address the sufficiency of Defendant's responses.

---

[1] The Court is not persuaded that "Defendant could only infer" that it was granted "an extension of an indeterminate time" when the response to its request for an extension of three weeks was "forward the responses as soon as possible." (R. Doc. 27). In addition, to the extent such an indeterminate extension could run beyond the deadlines contained in the Court's scheduling order, any such stipulation between the parties would run afoul of Rule 29(b) of the Federal Rules of Civil Procedure.

[2] Objections to Interrogatories are appropriate if stated in a "timely objection" unless the court, for good cause, excuses the failure. Fed. R. Civ. P. 33(b)(4).

[3] Although it does not appear to be the case in the instant matter, the course of action suggested by Defendant could also serve to reward parties that fail to comply timely with their discovery obligations, only to do the minimum required to avoid an adverse ruling on a Motion to Compel, effectively eliminating significant amounts of time for the parties to conduct effective discovery.

6

**B.      Individual Discovery Reponses**

Plaintiff's discovery requests consist of 5 Interrogatories and 7 Requests for Production of Documents. (R. Doc. 27-1). In addition to raising specific objections to some of the requests, Defendant began its responses with generalized, blanket objections to Plaintiff's entire set of discovery requests. In his Reply, Plaintiff argues that each of Defendant's responses to discovery is deficient.

**i.      Interrogatory No. 1**

Interrogatory No. 1 asks Defendant to identify any potential trial witnesses, including rebuttal and/or impeachment witnesses, and to "identify their expected testimony and/or knowledge regarding this matter." Defendant responded by providing a list of potential witnesses and reserving its right to later supplement its response, if necessary. Plaintiff suggests Defendant's reservation of its right to supplement its potential witness list fails to "substantially comply with Rule 26." (R. Doc. 38 at 2). According to Plaintiff, he "will be completely hamstrung in identifying witnesses" during discovery "only to have defendants later identify persons after depositions are completed." (R. Doc. 38 at 2).

Despite Plaintiff's contentions, Defendant's discovery responses are not deficient to the extent alleged. Rule 26(e)(1) requires a party "to supplement or correct" its discovery responses "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect . . . ." Plaintiff's fear that Defendant might not supplement its responses until after discovery and leave him "completely hamstrung" is premature. Discovery is still open and the Court will not assume a party's future noncompliance with the Federal Rules of Civil Procedure. Beyond that, the Federal Rules of Civil Procedure are designed to protect against the very thing Plaintiff describes.

7

Under Rule 37(c)(1), a party who fails to give information "or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *See Caskey v. Man Roland, Inc.*, 83 F.3d 418, at *5 (5th Cir. 1996) ("district court violated its discretion in failing to invoke the mandatory exclusion sanction of Rule 37(c)(1)" by not excluding defendant's surveillance tape requested by plaintiff during discovery, but presented by defendant for the first time at trial); *Red Dot Bldgs. v. Jacob Technology, Inc.*, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012) (Rule 37(c)(1)'s exclusion "is mandatory and automatic unless the party demonstrates substantial justification or harmlessness."); *Moore v. BASF Corp.*, No. 11-1001, 2012 WL 4344583, at *4 (E.D. La. Sept. 21, 2012) (a party is not excused from its Rule 26 obligations "because it has not fully investigated the case") (quoting Fed. R. Civ. P. 26(a)(1)(E)).

As long as Defendant has made a good faith effort to respond to Interrogatory No. 1 and has disclosed all of the responsive information known, its "reservation" is consistent with Rule 26. Defendant's response is not deficient in that respect. Plaintiff has raised no other issues regarding the sufficiency of Defendant's response. Therefore, Plaintiff's Motion to Compel is **DENIED** as it relates to Defendant's **Response to Interrogatory No. 1**.

### ii. Interrogatory No. 2 and Request for Production No. 5

Interrogatory No. 2 and Request for Production No. 5 ask Defendant to identify and produce "any and all" documents that it may introduce at trial, including documents intended for impeachment purposes and/or rebuttal. Defendant responds to both discovery requests by explaining it has yet determined what documents it may offer at trial and reserving its right to supplement its responses, if necessary, at a later date.

Plaintiff's Motion advises that Defendant's response is inconsistent with its June 24, 2013 initial disclosures, which actually identified and promised to later produce categories of potential trial exhibits. Defendant indicates its production of Plaintiff's "personnel file, payroll records and written statements lodged against plaintiff," in response to other requests and admits it should have clarified that those documents were also responsive to Interrogatory No. 2 and Request for Production No. 5. (R. Doc. 39 at 11-12).

The Court has reviewed both parties' memoranda and attachments and finds Defendant has produced documents potentially responsive to Interrogatory No. 2 and Request for Production No. 5 in response to other discovery request. Plaintiff's Motion is therefore **DENIED** as to **Interrogatory No. 2** and **Request for Production No. 5**. Nonetheless, to the extent Defendant has identified additional documents responsive to Interrogatory No. 2 and Request for Production No. 5 that have not otherwise been produced, Defendant must produce those documents by **December 11, 2013**.[4]

### iii. Request for Production No. 2

Plaintiff's Request for Production No. 2 seeks: "A copy of the Plaintiff's personnel file, including all wage information, documents signed by [him] and any documents in your possession relating to plaintiff's employment with you." Defendant objects to the request as overly broad, but still provided a copy of plaintiff's personnel file and wage information and advised it is reviewing additional documents and will supplement its response, if necessary.

---

[4] The Court reminds the parties of their on-going obligations to timely supplement their initial disclosures and responses to discovery. Defendant has known about this case for one year (R. Doc. 1-2 at 16) and has had ample time to investigate the claims against it. Likewise, it has been over 6 months since Defendant identified 5 categories of documents in its initial disclosures and explained it was "in the process of compiling" them to produce to Plaintiff. (R. Doc. 27-2 at 3). Any documents or information not timely produced by either party in accordance with the Court's Scheduling Order may potentially be excluded from trial.

9

Plaintiff alleges that Defendant's response is incomplete because it failed to produce his 2008-2009 and 2010-2011 performance evaluations and his written complaints of discrimination to LSU. Plaintiff further accuses Defendants of not producing responsive e-mails, which include several of his complaints of racial discrimination and a response to an "unfounded letter of reprimand."[5] (R. Doc. 38 at 6). According to Plaintiff, the emails were in the "Outbox" folder of his LSU e-mail account when the folder was "mysteriously deleted" after the e-mails were sent.[6] (R. Doc. 38 at 6). Plaintiff represents that he reported the issue to LSU. (R. Doc. 38 at 6). Defendant does not address the deleted e-mails or missing performance reviews.

The Court finds Defendant's response sufficient to the extent the entirety of Plaintiff's personnel file and wage documents known to Defendant have been produced and therefore **DENIES** Plaintiff's Motion as to **Request for Production No. 2**. Nonetheless, Defendant should make every effort to locate any additional responsive documents, including any performance reviews.[7] If Defendant has identified, but not produced any responsive documents, Defendant must supplement its Response to Request for Production No. 2 by producing those documents by **December 11, 2013**.

The Court now turns to Plaintiff's allegation that Defendant failed to produce specific e-mails in his deleted Outbox folder and/or other documents Plaintiff wrote in response to a letter of reprimand. Even if the Court accepted Plaintiff's allegations as true, it would still find

---

[5] It is not clear from Plaintiff's Reply whether the allegedly deleted Outbox folder includes Plaintiff's response to the "unfounded letter of reprimand."

[6] Plaintiff's Reply specifically identifies an e-mail he sent to Joseph Alleva on March 28, 2012 and his February 26, 2008 "rebuttal to Judy Southard, Skip Bertman, Eddie Nunez, Miriam Seger, and Wendy Nall to the unfounded letter of reprimand." (R. Doc. 38 at 6).

[7] In his complaint, Plaintiff alleges that he never received a performance evaluation for the 2010-2011 season, in violation of LSU's own policy. (R. Doc. 1-2 at 4). Plaintiff fails to address this inconsistency in his Motion to Compel.

Defendant's response sufficient because Plaintiff's request is overly broad to put Defendant on notice of these specific documents Plaintiff wants produced.

Rule 34(b)(1)(A) requires a request for production to describe the sought after items with "reasonable particularity." "The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required." *U.S. v. Nat'l Steel Corp.*, 26 F.R.D. 607, 610 (S.D. Tex. 1960). Defendant could not have reasonably understood that Plaintiff was seeking production of very specific e-mails from a request for "any and all" documents relating to Plaintiff's employment. As the requesting party, Plaintiff has an obligation to sufficiently describe each item or category of items he desires. If Plaintiff wants these documents produced, he should serve Defendant with a more particularized discovery request. Plaintiff's Motion to Compel is **DENIED** to the extent he seeks to compel production of these e-mails in response to **Request for Production No. 2**.

### iv. Interrogatory No. 3

Interrogatory No. 3 asks Defendant to "identify each person, if any, who you may call as an expert witness" and to disclose the subject matter and factual basis of each expert's opinion testimony. Plaintiff does not make any substantive argument or offer any legal authority in support of his Motion with regards to Interrogatory No. 3. Regardless, the Court will not issue an order compelling the identification of experts at a time that conflicts with its own Scheduling Order. (R. Doc. 18). Plaintiff submitted the Status Report containing the expert disclosure deadlines agreed upon and suggested by the parties, which were adopted by the Court's Scheduling Order. (R. Doc. 15) (Defendant must identify experts by February 3, 2014 and exchange expert reports by February 14, 2014). Plaintiff has also not requested to modify the

Scheduling Order or showed the required "good cause" for any such modification. Therefore, Plaintiff's Motion is **DENIED** as it pertains to **Interrogatory No. 3**.

### v. Interrogatory No. 4 and Request for Production No. 1

Interrogatory No. 4 and Request for Production No. 1 ask Defendant to identify and produce "all policies in effect" during Plaintiff's employment "regarding harassment, discrimination and/or retaliation." Despite raising general objections, Defendant's response directed Plaintiff to LSU's Policy Statement 1 and Permanent Memorandum 55, located on its website, www.LSU.edu. (R. Doc. 27-1 at 5-6). Plaintiff believes this response is insufficient because "PS 1 and PM 55 are LSU System policies" that are not specific to LSU's Baton Rouge campus. (R. Doc. 38 at 5).[8] The record is not clear whether any such LSU System Policies also apply to the LSU Baton Rouge Campus. The discovery requests likewise contain no such narrow limitation. Defendant's Sur-Reply clarifies that Policy Statement 1 is not promulgated by the LSU System, but is specific to Louisiana State University and not system-wide." (R. Doc. 39 at 10-11).

Assuming Defendant's response is complete and that these are the only two policies in effect that have been identified, Plaintiff's Motion to Compel is **DENIED** as to **Interrogatory No. 4 and Request for Production No. 1**.

---

[8] Plaintiff also suggests that this information is critical because it will be necessary to rebut an assertion of the *Faragher/Ellerth* affirmative defense by Defendant. An employer is vicariously liable under Title VII for a supervisor's harassment of an employee. If the harassment results in a tangible employment action – i.e., an action affecting the terms and conditions of employment – the employer is liable, regardless of whether it knew or should have known of the harassment. When no tangible employment action is taken, a defending employer may raise the affirmative defense articulated by the Supreme Court in *Faragher* and *Ellerth*. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (employers are vicariously liable for supervisor's harassment), *and Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (same). The *Faragher/Ellerth* affirmative defense consists of two elements: (1) the employer exercised reasonable care to prevent and promptly correct any harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807.

12

Case 3:13-cv-00005-BAJ-RLB   Document 40   12/04/13   Page 12 of 17

### vi. Request for Production No. 3

Request for Production No. 3 seeks: "Copies of any and all written or recorded statement(s) and/or complaints brought or otherwise lodged against the plaintiff." Defendant responded by producing 59 pages of "written statements and/or complaints" and explained it is reviewing additional documents and will supplement its response if necessary. (R. Doc. 27-1 at 6-7). According to Plaintiff, Defendant's response merely indicates that it has not produced all of the available documents and those that were produced are largely based on hearsay and written by Shelly Mullenis, who is not listed as a witness. (R. Doc. 38 at 6).

Defendant's response is sufficient to the extent Defendant has produced all responsive documents of which it is aware. Whether these complaints are based on hearsay, as Plaintiff contends, is largely irrelevant considering that information responsive to discovery requests "need not be admissible at trial." Fed. R. Civ. P. 26(b)(1). Therefore, Plaintiff's Motion to Compel is **DENIED** as it pertains to **Request for Production No. 3**.

### vii. Request for Production No. 4

Request for Production No. 4 asks Defendant to produce: "Copies of any and all employee complaint(s) regarding harassment of any kind, discrimination of any kind, and retaliation of any kind for the past 10 years." (R. Doc. 27-1 at 8). Defendant objects to the temporal and substantive scope of the request as overly broad and likely to illicit information protected from production by attorney client and work product privileges.[9] Notwithstanding its

---

[9] Defendant's "generalized" and "conclusory" statements that the responsive documents *might* be privileged, are insufficient to avoid disclosure. *See Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 (M.D. La. March 10, 2008) (an assertion of privilege "should be sufficiently detailed to allow the opposing party and the court to determine whether the withholding party has satisfied its burden of demonstrating the existence of the claimed privilege"); *BG Real Estate Servs. v. American Equity Ins. Co.*, No. 04-3408, 2005 WL 1309048, at *3 (E.D. La. May 18, 2005) ("the party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claims and cannot rely merely on a blanket assertion of privilege"). Defendant's blanket and unsupported assertion of privilege prevents any meaningful consideration by the Court. Therefore, it will not be considered.

13

objections, "defendant shows that there have been no race-based complaints filed by any coaches in the last five (5) years, including any lodged by plaintiff, Anthony Minnis." (R. Doc. 27-1 at 8).

Plaintiff alleges that Defendant's "response that Mr. Minnis did not file any discrimination complaint is false." (R. Doc. 38 at 7). Plaintiff further argues that 10 years is an appropriate timeframe if PM 55 is the relevant harassment policy, as Defendant claims, because PM 55 dates back to the year 2000. (R. Doc. 38 at 7). Plaintiff also points out that a 5 year temporal scope would exclude complaints by Pokey Chapman, the former African American head coach of women's basketball who left LSU in 2008 after raising complaints of race discrimination. (R. Doc. 38 at 7).

"Other claims of discrimination against an employer have been found relevant to a discrimination claim if limited to the (a) same form of discrimination, (b) the same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination occurred." *Willis v. U.S.*, No. 11-708, 2012 WL 5472032, at *1 n.6 (M.D. La. Nov. 9, 2012); *see also Marchese v. Secretary, Dep't of the Interior*, No. 03-3082, 2004 WL 2297465, at *2 (E.D. La. Oct. 12, 2004) (same); *Mitchell v. Nat'l Railroad Passenger Corp.*, 208 F.R.D. 455, 460 (D.D.C. 2002) (same). The relevant timeframe may range, depending on the facts of each case. However, courts have generally limited discovery of other employees' claims of discrimination to 3 to 5 years. *Gillum v. ICF Emergency Management Services, L.L.C.*, No. 08-314, 2009 WL 2136269, at *6 n.5 (M.D. La. July 16, 2009) (limiting discovery of other claims of discrimination to "the past five (5) years") (collecting cases); *Marchese v, Secretary, Dep't of the Interior*, No. 03-3082, 2004 WL 2297465, at *2-3 (E.D. La. Oct. 12, 2004) (3 years).

Considering the parties' arguments and the applicable law, the Court **GRANTS** Plaintiff's Motion as it pertains to Request for Production No. 4, subject to the following

14

restrictions. Plaintiff's Request for Production No. 4 is limited to (1) complaints of any type of racially discriminatory conduct, (2) made by any employee of the athletic department of LSU's Baton Rouge campus, including coaches, (3) made between January 1, 2008 and December 31, 2012. The Court uses the term "complaint" in its broadest sense. In other words, a complaint constitutes any allegation of race discrimination, no matter how informal, including e-mails. Therefore, Plaintiff's Motion is **GRANTED** as to **Request for Production No. 4**. Defendant must **supplement** its Response to **Request for Production No. 4** consistent with the Court's Order by **December 11, 2013**.

      **viii.**     **Request for Production Nos. 6 and 7**

Request for Production Nos. 6 and 7 seek copies of "any and all evaluations and/or performance reviews" and "NCAA violations" for various head coaches of smaller men's and women's sports between January 1, 1995 to the present. Defendant objects to the request, arguing that these coaches "are not [sic] the proper comparators to plaintiff in his discrimination claims." (R. Doc. 27-1 at 9-10).

A plaintiff may establish a prima facie case of discrimination by showing that other employees outside of his protected class "who engaged in similar acts," known as similarly situated comparators, were treated more favorably. *Mayberry v. Vaught Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (plaintiff must show that similarly situated employees "were treated differently under circumstances 'nearly identical' to his"). In the context of comparators, the Fifth Circuit has explained that "nearly identical" circumstances does not equate to completely "identical," as such a "requirement would be essentially insurmountable." *Tuner v. Kansas City Southern Ry. Co.* 675 F.3d 887, 893 (5th Cir. 2012) ("This Circuit's nearly identical standard is not equivalent to identical."). Rather, two employees engaged in some conduct of "comparable

15

seriousness" and who, at the time, hold the "same" or "materially" similar responsibilities are similarly situated comparators. *Turner*, 675 F.3d at 896 ("Each employee's track record at the company need not comprise the identical number of identical infractions.") (internal citations omitted).

Courts evaluating whether college sports coaches are appropriate comparators have noted that:

> In determining whether men's and women's coaching positions are equal, courts have looked to such factors as team size, the number of assistant coaches, recruiting responsibilities, the amount of spectator attendance and community interest in the sport, the amount of revenue generated by the sport, the degree of responsibility in the area of public and media relations and promotional activities, and the relative importance of the sport in the athletic program as a whole.

*Weaver v. Ohio State University*, 71 F. Supp. 2d 789, 800 (S.D. Ohio 1998) (considering a disparate pay claim under the EPA) (collecting cases); *see also Richardson v. Sugg*, 325 F. Supp. 2d 919, 926-27 (E.D. Ark. 2004) (considering levels of "experience, training, education, ability, effort, and responsibility" to find plaintiff, an African American head basketball coach, and the university's Caucasian head football coach were similarly situated comparators in a Title VII case); *Peirick v. Indiana State University-Purdue University Indianapolis Athletics Dep't*, 510 F.3d 681, 690 (7th Cir. 2007) (finding the women's and men's tennis coaches were appropriate comparators in a Title VII case partially because the two had similar duties and there was "no distinctions in their responsibilities."); *Mehus v. Emporia State University*, 326 F. Supp. 2d, 1221, 1228 (D. Kan. 2004) (evidence of whether volleyball, basketball and football programs were "'core sports' which merit preferential funding . . . has clear relevance to plaintiff's claim that" both the men's and women's basketball coaches "are suitable comparators with regard to salary.").

Considering the applicable law, the coaches listed in Request for Production Nos. 6 and 7 could potentially fall within the realm of similarly situated comparators. In this more unique context, Plaintiff must rely on information pertaining to coaches of comparative sports and information regarding these positions is discoverable. As Plaintiff aptly points out, it chose head coaches of other smaller sports programs and excluded sports like LSU football for obvious reasons.

The Court therefore finds the documents requested are likely to lead to the discovery of admissible evidence because they are consistent with the type of evidence considered by courts to determine if coaches of different sports are similarly situated comparators. *See Peirick*, 510 F.3d at 689-90 (comparing several coaches' records of complaints by students and employees, prior reprimands, prior misconduct, "NCAA rule violations and comments" in their performance evaluations to determine whether they were similarly situated in a Title VII case). Plaintiff's Motion to Compel is **GRANTED** as it pertains to **Request for Production Nos. 6 and 7**.

**C.     Expenses**

Under Rule 37(a)(5)(C), if a motion to compel discovery is granted in part and denied in part, a court may apportion the reasonable expenses for the motion. Because the Motion to Compel has been granted in part and denied in part, the parties shall each bear their own costs in connection with the Motion.

Signed in Baton Rouge, Louisiana, on December 4, 2013.

                                                  **RICHARD L. BOURGEOIS, JR.**
                                                  **UNITED STATES MAGISTRATE JUDGE**