UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANTHONY MINNIS

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANCIAL
COLLEGE

CIVIL ACTION NO. 13-CV-00005

JUDGE BRIAN A. JACKSON

MAGISTRATE JUDGE
RICHARD L. BOURGEOIS, JR.

STATEMENT OF UNCONTESTED MATERIAL FACTS

NOW INTO COURT, through undersigned counsel, come defendants, the Board of

supervisors of Louisiana State University and Agricultural and Mechanical College (LSU), and

submits the following Statement of Uncontested Material Facts in support of its Motion for

Summary Judgment:

1.  LSU is an institution of higher learning.  It participates in Division 1 NCAA sports
    including women's tennis and is a member of the Southeastern Conference (SEC).  All of
    LSU's athletic teams are expected to compete at a high level.

2.  Tony Minnis was hired by LSU as a women's tennis coach in 1991.  At the time he was
    hired he had never been a collegiate head coach.  Throughout his employment, Mr.
    Minnis has had an employment contract with LSU for a definite term.

3.  At all times during Mr. Minnis' employment LSU had policies prohibiting race
    discrimination and retaliation.  Mr. Minnis never reviewed these policies nor complained
    to any Human Resources employee about discrimination or retaliation.

4.  As coach of the women's tennis team, Mr. Minnis' duties included administering,
    managing and leading the program to effectively compete in NCAA competition; hiring
    and managing assistant coaches and other staff; directing the management of the
    program, including budget and other resources; being reasonably knowledgeable of all
    federal and state laws governing intercollegiate athletes as well as SEC and NCAA rules;
    assuring and monitoring compliance with these rules; upholding LSU's academic
    standards; and exercising due care in the supervision of student-athletes.

5.  The LSU Athletic Department is supervised by its Athletic Director.  In 2008, Joe Alleva
    became LSU's Athletic Director.  Since arriving at LSU he has hired three African-
    American head coaches.

1

675374.1

6.  From 2001 to 2004, Mr. Minnis was supervised by Judy Southard, Senior Associate Athletic Director and Senior Women's Administrator. Judy Southard retired from LSU in 2010. From 2004 to 2006, Mr. Minnis' supervisor was Herb Vincent, Senior Associate Athletic Director. His supervisor from 2006 to 2012 was Eddie Nuñez, Senior Associate Athletic Director. During much of the time pertinent to Mr. Minnis' claim, Miriam Segar was employed as the Senior Associate Athletic Director and Senior Women's Administrator.

7.  In the year before Mr. Minnis was hired (1991), the LSU women's tennis team was 7-2 in the SEC. In 1992, Mr. Minnis' first year as LSU's coach, the SEC expanded from ten to twelve teams; thus, each team played eleven conference matches each year from that point forward. Despite playing two more conference matches each year, in twenty-one years Mr. Minnis' teams **never** won seven conference matches in a year. In the last eleven years of Mr. Minnis' tenure, the women's tennis team had only four winning seasons. During his twenty-one years as head coach, the women's tennis team achieved a winning record in the Southeastern Conference on only three occasions (1997, 2004, 2008), finishing with a win-loss record of 6-5 all three times. This means that Minnis' last SEC winning season occurred four years prior to his non-renewal.

8.  The overall SEC record of his team is 86-146. During the last four years of his LSU employment, which coincide with Joe Alleva's first four years as Athletic Director, Mr. Minnis' total SEC win-loss record was 16-27.

9.  Records for both Mr. Minnis' entire tenure and his last four years place LSU women's tennis ninth in the SEC. Furthermore, immediately preceding the non-renewal of Mr. Minnis' contract, the women's tennis team had three consecutive losing seasons. In 2010 the team's overall record was 10-15; in 2011 and 2012 it was 11-13. In other words, at the time his contract was not reviewed Mr. Minnis had not had an overall winning season for three years.

10. In women's tennis, sixty-four teams compete in the NCAA tournament. Simply making it into the tournament is not the level of achievement expected of and communicated to Mr. Minnis.

11. Mr. Minnis' teams competed in the NCAA Tournament fifteen times in Mr. Minnis' twenty-one-year tenure. However, in Mr. Minnis' last twelve years at LSU, his team won only two NCAA tournament matches, losing in the first round on seven occasions, and losing in the second round twice. In those twelve years, LSU never advanced past the second round of the NCAA tournament. Mr. Minnis' team did not reach the tournament in 2006, 2010 and 2011. Minnis' overall tournament record was a losing one: 11-16.

12. Women's collegiate tennis teams are nationally ranked by the Intercollegiate Tennis Association (ITA). Mr. Minnis' team's highest ranking was 18th in 1995. In 2010 his team was ranked 69th or 70th; in 2011 it was ranked 68th and in 2012 it was ranked 44th.

13. During most of his employment, Mr. Minnis received written performance evaluations. He was evaluated on factors such as planning and organizing, leadership, sports

2

knowledge, student-athlete management, academic success of student-athletes, level of success in the sport, knowledge of and compliance with NCAA rules, recruiting, team work, judgment, work environment and safety, and management and vision.

14. With the exception of two years, in every year from 2001 to 2010, Mr. Minnis was rated as "needs improvement" or "unsatisfactory" in the "level of success in sport" and "recruiting" categories.    Additionally, in 2002-2003 he was rated as "needs improvement" in leadership, student-athlete management, judgment, and management and vision.  In 2005-2006 he was rated as "needs improvement" in judgment and in 2006-2007 he was rated as "needs improvement" in student-athlete management and NCAA knowledge and compliance.

15. Mr. Minnis failed to achieve the goals he and his supervisor agreed to in his evaluations.

16. In the years leading to the non-renewal of Mr. Minnis' contract, LSU received complaints from parents and student athletes about his coaching style and communication with the team.

17. LSU Athletic Trainers expressed concerns about Minnis' management of student injuries. As a result of this and other issues, a meeting was held between Jack Marrucci, Director for Athletics Training, Micki Collins, Sr. Associate Athletics Trainer, Coach Minnis and other athletics administrators (Eddie Nuñez, Miriam Segar, Judy Southard) to clarify the proper procedure to be used in interacting with the training staff.

18. In January 2012, a serious incident occurred involving a student-athlete on the women's tennis team.

19. In March 2012, at Mr. Minnis' request, a sports psychology consultant, Tiffany Jones, met with several LSU teams, including the women's tennis team.  This meeting revealed significant team morale issues, many of which were attributable to Mr. Minnis' coaching style.

20. While employed by LSU, Mr. Minnis did complain regularly about what he considered to be inadequate facilities at LSU.  These facilities were used by both the men's and women's tennis teams.

21. During all times pertinent to Mr. Minnis' claims, the men's tennis team was coached by Jeff Brown.  Both teams used the same outdoor facility.  Both teams were inconvenienced with regard to practice time and matches because LSU did not have an indoor facility.  Both coaches complained about this situation.

22. During his employment Mr. Minnis questioned whether he was being adequately compensated.  At no time did he allege that his level of compensation reflected discrimination or retaliation.

23. Mr. Minnis' salary was set in comparison to that of other women's tennis coaches in the SEC.

3

675374.1

24. Throughout his employment with LSU, Mr. Minnis mentioned race on only one occasion. In early 2008, following a letter from his supervisor, Judy Southard, Mr. Minnis told two LSU administrators that he felt that Ms. Southard was "racist".

25. Other than this one statement in 2008, Mr. Minnis never complained about race discrimination to anyone at LSU.

26. Mr. Minnis never mentioned Title IX in connection with any of his facility-related complaints.

27. As a result of Mr. Minnis' inadequate job performance (particularly his abysmal competitive record) LSU exercised its right to not renew Mr. Minnis' contract which was expiring in 2012. This decision was made by Miriam Segar, Eddie Nuñez, and Joe Alleva.

Respectfully Submitted:

**JAMES D. "BUDDY' CALDWELL,
ATTORNEY GENERAL**

**TAYLOR, PORTER, BROOKS & PHILLIPS**


s/Vicki M. Crochet
Vicki M. Crochet, La. Bar Roll No. 4614
Robert W. Barton, La. Bar Roll No. 22936
Deborah E. Lamb, La. Bar Roll No. 18991
Special Assistant Attorneys General
451 Florida Street, 8th Floor Chase Bank
Baton Rouge, Louisiana 70801
Telephone: (225) 381-0242
Facsimile: (225) 214-0462

675374.1

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on the _15ᵗʰ_ day of May, 2014, a copy of the foregoing

Statement of Uncontested Material Facts was filed electronically with the Clerk of Court using

the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the

court's electronic filing system.

> s/Vicki M. Crochet
> Vicki M. Crochet

5

675374.1